# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF
COLORED PEOPLE, *et al.*,

    Petitioners,

v().

UNITED STATES OF AMERICA,

    Respondent.

Case No. 1:26-cv-1205-JPB

## MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION TO SUMMARILY DISMISS OR STAY PROCEEDINGS

    The government's cursory motion to dismiss or stay rebuts neither the harm Petitioners have shown nor the legal grounds for the protections they seek. The motion aims only for delay, which would provide the government an opportunity to use the seized voter data for purposes beyond the criminal investigation in a manner that is difficult or impossible to undo. If use of the voter data beyond the criminal investigation is not the government's design, it could easily say so.

    The Court should reject the government's play for time. First, Petitioners have standing to vindicate their constitutional and statutory interests in material that the government has already seized. Second, given that Petitioners have standing, the Court need not address the government's Rule 41(g) argument because the government does not challenge Petitioners' right to intervene, as

distinct from their right to relief under Rule 41(g). But contrary to the government's claim, Rule 41(g) does authorize Petitioners to request equitable relief besides return of the seized materials, and its protections extend to Petitioners' constitutional and statutory interests. The government has not impugned those interests in its Motion and is precluded from contesting them on reply. *See, e.g.*, *United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002) (collecting cases). Third, a stay would unduly prejudice Petitioners. The government has not disavowed an intention to misuse the seized voter data, and its own repeated statements regarding its intended use of voters' private information and judicial findings on the issue substantiate its intention. A stay would thus allow the government continued unfettered access to the data at the cost of Petitioners' constitutional and statutory rights.

## ARGUMENT[1]

### I. Petitioners Have Standing to Prevent Injuries Arising from the Government's Improper Use of Their Private Information.

The Court should reject the government's vague and conclusory challenge to Petitioners' standing. Petitioners' standing rests on solid legal and factual grounds. Petitioners have standing to seek proper handling of their private data. *See, e.g.*,

---

[1] Petitioners respectfully refer the Court to the factual background in their Emergency Motion for Relief Under Rule 41(g) and for Intervention, none of which the government contests in its Motion. *See* ECF No. 1-1 at 3–12.

*Am. Farm Bureau Fed'n v. E.P.A.*, 836 F.3d 963, 968 (8th Cir. 2016) (holding plaintiffs had "legally cognizable interest" in preventing "nonconsensual dissemination of personal information"); *All. for Retired Ams. v. Bessent,* 770 F. Supp. 3d 79, 99–104 (D.D.C. 2025) (plaintiff had standing to challenge production of personal information to DOGE as invasion of privacy); *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 522 (S.D.N.Y. 2017) (noting "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue." (citation omitted)). The government seized Petitioners' private personal information, which they had provided to Georgia under a statutory guarantee that it not be disclosed, *see* O.C.G.A. § 21-2-225(b). The Privacy Act, moreover, prohibits the federal government from maintaining any "record describing how any individual exercises rights guaranteed by the First Amendment," 5 U.S.C. § 552a(e)(7), and the seizure captured materials disclosing how individuals voted. The government does not dispute these facts.

The undisputed seizure of voter rolls, with no limitations on the government's use of that data for purposes beyond the criminal investigation, also chills Petitioners in the exercise of their First Amendment rights, including their rights to vote. *See* ECF No. 1-1 at 13–16; *Harrell v. The Fla. Bar*, 608 F.3d 1241,

1254 (11th Cir. 2010) ("Under controlling case law, we apply the injury-in-fact requirement most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced."); *Dream Defs. v. DeSantis*, 553 F. Supp. 3d 1052 (N.D. Fla. 2021) (holding plaintiffs sufficiently alleged injury where there was credible threat to First Amendment rights). As noted in Petitioners' Rule 41(g) and intervention motion, ECF No. 1-1 at 9, and undisputed by the government here, courts have already found that the government's attempts to centralize confidential voter data "would have a chilling effect on voter registration which would inevitably lead to decreasing voter turnout as voters fear that their information is being used for some inappropriate or unlawful purpose." *United States v. Weber*, No. 2:25-CV-09149, 2026 WL 118807, at *20 (C.D. Cal. Jan. 15, 2026); *see also United States v. Oregon*, No. 6:25-CV-01666, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026) (holding government's intent "to create a nationwide database of confidential voter information and use it in unprecedented ways, including immigration enforcement efforts, is chilling.").

The government contests Petitioners' standing on the ground that Petitioners' concern about misuse of their personal identifying information is "speculative." Far from it. Even if the facts alleged in Petitioner's Motion were not assumed to be true on the government's "facial attack" to Petitioners' standing,

4

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008), there is no dispute that the government (1) seized the voter files, (2) without limitation on its use, and (3) that those files contained voters' protected personal information.

Even if more were required, Petitioners' claims do not presuppose some fanciful exploitation of the materials. Rather, they are concerned with use of the materials beyond the criminal investigation for purposes the government has announced in other contexts. In connection with multiple litigations seeking virtually the same information seized here,[2] the government has stated repeatedly that it will use the materials to compile a comprehensive national database containing private information from tens of millions of voters.[3] *See Dream Defs.*, 553 F. Supp. 3d at 1077 (holding plaintiffs had standing where officials' public

---

[2] As noted in Petitioners' Motion and undisputed here by the government, although the materials seized are from 2020, the vast majority of the people on the voting rolls then are still on now, and personal identifying information like social security and driver's license numbers do not change. ECF No. 1-1 at 9 n.3.

[3] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, Homeland Sec. Newswire (Sept. 13, 2025), https://www.homelandsecuritynewswire.com/dr20250913-doj-is-sharing-state-voter-roll-lists-with-homeland-security; Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR (Dec. 10, 2025), https://www.npr.org/2025/12/10/nx-s1-5588384/save-voting-data-us-citizens.

statements left the court with "little doubt that they intend[ed]" to enforce law). A DOJ attorney publicly worried that the data also would be used "for broader immigration enforcement."[4]

In addition, district courts have made factual findings detailing the government's planned use of voter information. In *Weber,* the Court found that the government had undertaken an "alarming . . . centralization of Americans' information within the Executive Branch—without approval from Congress or Americans themselves." 2026 WL 118807, at *11. The Court also found that DOJ had not been candid about its purposes. *Id.* at *12. The Court in *United States v. Oregon* echoed these findings, citing additional actions by DOJ that cast "serious doubt as to the true purposes for which [the government] is seeking voter registration lists in this and other cases, and what it intends to do with that data." 2026 WL 318402, at *11; *see also id.* at *13 ("When [the government], in this case, conveys assurances that any private and sensitive data will remain private and used only for a declared and limited purpose, it must be thoroughly scrutinized and squared with its open and public statements to the contrary.").

---

[4] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department: Sixty Attorneys Describe a Year of Chaos and Suspicion*, N.Y. Times Mag. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

The government knows what it intends to do with the materials it seized. It could allay concerns by committing to use them only for the investigation in which it obtained the warrant. It has not done so. Petitioners have standing to enforce their rights in the seized material.

## II. Rule 41(g) Authorizes the Court to Order Reasonable Conditions Over the Government's Use of the Seized Materials.

The government does not challenge Petitioners' constitutional or statutory interests in the seized information. Instead, abandoning the Eleventh Circuit's test for equitable jurisdiction over Rule 41(g) motions, it argues that Petitioners cannot ask for any remedy under Rule 41(g) except the return of seized materials and that Petitioners do not have any possessory or property interest at issue. Eleventh Circuit precedent, however, establishes that a court's authority to fashion relief under Rule 41(g) extends beyond "situations not specifically covered by the Rule," *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974) (quotation omitted), including issuing equitable relief other than an order to return property. And the Eleventh Circuit permits aggrieved parties to seek relief to protect their constitutional and statutory interests in seized material.

Rule 41(g) does not require that Petitioners ask the Court to order the government to return property. The Eleventh Circuit has held Rule 41(g) is "a principle of equity jurisdiction," and the Court's equity jurisdiction "persists as to situations not specifically covered by the Rule." *Hunsucker*, 497 F.2d at 34

(quotation omitted). Thus, "[i]f the district court finds . . . that an equitable remedy is appropriate, then the court has authority to fashion equitable relief." *United States v. Potes Ramirez*, 260 F.3d 1310, 1315 (11th Cir. 2001); *see also, e.g.*, *United States v. Palacios Gonzalez*, 372 F. App'x 996, 999 (11th Cir. 2010) (instructing district court to determine "what equitable relief might be appropriate" if individual's property was destroyed); *accord United States v. Rodriguez*, No. EP-08-1865, 2011 WL 5854369, at *3 (W.D. Tex. Feb. 18, 2011) (holding that after a court exercises equitable jurisdiction over a Rule 41(g) motion it "may fashion *any* appropriate relief that comports with traditional equitable principles" absent a "clear Congressional command" to the contrary).

Rule 41(g)'s advisory committee notes similarly disclaim the "all or nothing approach" that the government proposes here. Fed. R. Crim. P. 41 advisory committee's note to 1989 amendment. Previously, Rule 41 required that the government "either return records and make no copies or keep originals notwithstanding the hardship to their owner." But the amended rule recognizes that "reasonable accommodations might protect both the law enforcement interests of the [government] and the property rights of property owners and holders." *Id.* And it specifically contemplates relief that is not the return of the property. *Id.* (noting that in some circumstances "equitable considerations might justify an order requiring the government to return *or destroy* all copies of records that it has

seized" (emphasis added)). The government's constricted view of Rule 41(g) is plainly incorrect. *See, e.g.*, *Matter of Search of 624 NE 2nd St., McMinnville, OR*, No. 3:17-MC-00588, 2019 WL 13074679, at *11–12 (D. Or. July 16, 2019), *report and recommendation adopted sub nom. Matter of Search of 524 NE 2d St., McMinnville, OR*, No. 3:17-MC-00588, 2019 WL 13074678 (D. Or. Oct. 4, 2019) (holding Rule 41(g) authority "include[s] the lesser power of allowing the government to retain the fruits of its search subject to reasonable restrictions designed to protect the target's privacy interests"); *see also, e.g.*, *Snitko v. United States*, 90 F.4th 1250, 1265–66 (9th Cir. 2024) (ordering FBI to "sequester *or destroy* the records" (emphasis added)); *Rodriguez*, 2011 WL 5854369, at *15 (ordering government to transfer firearms to trustee to either hold firearms in trust or sell firearms and provide defendant with the proceeds); *Black v. United States*, 172 F.R.D. 511, 516–17 (S.D. Fla. 1997) (enjoining government from inspecting, copying, or disseminating information until further Court order).[5]

The government's argument that Petitioners lack a possessory interest in the seized materials likewise has no merit. "Rule 41(g) is concerned with those whose property *or privacy* interests are impaired by the seizure of their property for law enforcement purposes." *United States v. Fed. Ins. Co.*, No. 23-438, 2024 WL

---

[5] In any event, Petitioners' interests would be satisfied by the return of the property—including all copies and derivatives of the information contained in it—if the government agreed to it.

1714273, at *1 (9th Cir. Apr. 22, 2024) (quotation omitted and emphasis added); *see also, e.g.*, *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 599 (5th Cir. 2021) (finding petitioner had interest in "protecting the privacy" of privileged materials). Courts regularly rely on Rule 41(g) to protect third-party constitutional and statutory rights in seized property. *See, e.g.*, *Matter of Search of 624 NE 2nd St., McMinnville, OR*, 2019 WL 13074679, at *10–11 (allowing individual to bring Rule 41(g) motion to protect his and family members' privacy rights); *Black*, 172 F.R.D. at 515–17 (ordering relief tailored "to safeguard and protect the vitally important constitutional guarantees of confidentiality"). The Eleventh Circuit does not deviate from this uncontroversial interpretation of Rule 41(g). To the contrary, the Eleventh Circuit has affirmed the district court's authority under Rule 41(g) to fashion relief to "safeguard[] [intervenors'] privacy." *In re Sealed Search Warrant*, 11 F.4th 1235, 1247 (11th Cir. 2021).

Rule 41's plain language supports this understanding. It defines "property" to include "documents, books, papers, any other tangible objections, *and information*." Fed. R. Crim. P. 41(a) (emphasis added). Other definitions of "property" likewise demonstrate that Rule 41(g) permits individuals to bring claims to protect their constitutional and statutory rights in seized information. *United States v. Craft*, 535 U.S. 274, 278–79 (2002) (defining "property" as a "bundle of sticks" or "collection of individual rights."); *Property*, Black's Law

Dictionary (10th ed. 2014) (defining property as" "[c]ollectively, the rights in a valued resource such as . . . an intangible").

The government relies solely on *United States v. Howell*, 425 F.3d 971 (11th Cir. 2005), but that case concerned narrow and distinguishable facts: the defendant had asked that the court order the government to give him the money that the government had provided a cooperating source to stage a drug transaction for the defendant's arrest. *Id.* at 974. The court rejected the defendant's application because he never had a possessory interest in the money. *Id.* The Eleventh Circuit has since distinguished *Howell* because it was "undisputed" that the defendant never had any interest in the property and because the seized material "unquestionably belonged to the government at all times throughout the drug transaction." *United States v. Melquiades*, 394 F. App'x 578, 582–83 (11th Cir. 2010) (quotations omitted). Thus, the Eleventh Circuit primarily applies *Howell* when defendants have forfeited property and therefore retain no interest in it[6]; in cases involving petitioners' claims over their own information, the Eleventh Circuit assumes the petitioners' possessory interest, *see In re Sealed Search Warrant*, 11 F.4th at 1247.

---

[6] *See, e.g.*, *United States v. Stoune*, 842 F. App'x 433, 436 (11th Cir. 2021); *United States v. Blanc*, 698 F. App'x 990, 993 (11th Cir. 2017); *United States v. Chavous*, 589 F. App'x 468, 469 (11th Cir. 2014); *United States v. Prat*, 584 F. App'x 921, 924 (11th Cir. 2014); *United States v. Gregory*, 546 F. App'x 933, 935 (11th Cir. 2013).

Here, the government has not disputed that its seizure implicates Petitioners' constitutional and statutory interests. Thus, this case is the opposite of *Howell*: Petitioners' First Amendment, Fourteenth Amendment, and voting interests in the seized material are uncontroverted. *See* ECF No. 1-1 at 13–16. Petitioners also have uncontroverted statutory rights to keep their private information confidential. ECF No. 1-1 at 16–18. And they have possessory interests in the private information that they provided to election officials for limited purposes. The Court should reject the government's arguments.

### III. The Government Has Not Carried Its Burden in Establishing the Need for a Stay.

Rather than allaying Petitioners' concerns and confirming its intent to use the seized materials only for purposes related to the criminal investigation, the government seeks a stay that would allow it unfettered use of the seized materials in the interim. The government has not carried its burden for its extraordinary request. *See, e.g.*, *S.E.C. v. CRE Cap. Corp.*, No. 1:09-CV-0114, 2009 WL 1151739, at *2 (N.D. Ga. Apr. 27, 2009) (moving party failed to carry burden of establishing need for stay). The Court should reject the government's attempted end-run around Petitioners' Rule 41(g) motion and petition to intervene because it would prejudice Petitioners and it would not simplify the issues in the case.

Courts deny stays when they would cause undue prejudice to the nonmoving parties. *See Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.* 842 F. Supp.

2d 1360, 1369 (N.D. Ga. 2012). The crux of Petitioners' Motion is to limit the government's use of the seized materials to its criminal investigation into the 2020 election in Fulton County. The government controls the seized materials and certainly knows how it intends to use them, and yet it has not provided any assurances that it will not do exactly what Petitioners claim. *Cf. Matter of Search of 624 NE 2nd St., McMinnville, OR*, No. 3:17-MC-00588-AC, 2019 WL 13074679, at *14 (D. Or. July 16, 2019), *report and recommendation adopted sub nom. Matter of Search of 524 NE 2d St., McMinnville, OR*, No. 3:17-MC-00588-AC, 2019 WL 13074678 (D. Or. Oct. 4, 2019) (noting that "government's possession of such a vast trove of information—most of which will certainly be unrelated to the government's investigation—threated [applicant's] privacy").

And once the government accesses the data for purposes unrelated to the 2020 criminal investigation, it makes the harms done to Petitioners irreparable. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (recognizing that ongoing First Amendment privacy violations constitute irreparable injury).

Pausing determination of the appropriate use of the seized data would be the ultimate prejudice to Petitioners as it ensures the government may use the evidence

as it wishes and interfere with the privacy and voting rights of the Petitioners and their members. The government's apparent tactics in other cases provide ample grounds for concern. *See, e.g.*, Memorandum Opinion, at 1 *J.G.G. v. Trump*, No. 1:25-cv-00766 (D.D.C. Apr. 16, 2025), ECF No. 81 (finding Venezuelan detainees had been "spirited out of the United States by the Government before they could vindicate their due-process rights by contesting their removability in a federal court, as the law requires."); *G.F.F. v. Trump*, 781 F. Supp. 3d 195 (S.D.N.Y. 2025) (noncitizen detainees would likely suffer irreparable harm by removal from United States to maximum security prison in El Salvador, where they would endure abuse and inhumane treatment with no recourse to bring them back, absent preliminary injunction). The government's reticence at the February 27, 2026, hearing in *Pitts* to agree not to review the documents in response to the Court's request amplifies this concern. *See* Transcript at 5–6, *Pitts v. United States*, 1:26-cv-00809-JPB (N.D. Ga. Feb. 27, 2026), ECF No. 51.

    Nor does the government attempt to explain how a stay would simplify the issues in this case aside from noting that "*Pitts* concerns the same property." ECF No. 26 at 4. Courts deny stay motions when parties have provided far more justification than the government has provided here. *Collegiate Licensing,* 842 F. Supp. 2d at 1360; *Franklin v. Atl. Credit & Fin., Inc.*, No. 1:19-CV-03696, 2020 WL 10046092, at *4–5 (N.D. Ga. Apr. 20, 2020), *report and recommendation*

*adopted,* No. 1:19-CV-03696, 2020 WL 10046963 (N.D. Ga. July 17, 2020) (denying stay where facts were "not on all fours"); *Medina v. Nationstar Mortg. LLC*, No. 1:16-CV-02036, 2017 WL 971919, at *3 (N.D. Ga. Mar. 13, 2017) (denying stay where decision in related case would not be dispositive).

In reality, a stay pending resolution of *Pitts* would not simplify the issues in this case. In *Pitts*, the County is challenging the scope and legality of the warrant and seeks return of the seized materials. *See* Memorandum of Law In Support of Petitioners' Emergency Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) at 5, 24, *Pitts v. United States*, 1:26-cv-00809-JPB (N.D. Ga. Feb. 5, 2026), ECF No. 1-1. Petitioners' Motion does neither. Rather, Petitioners seek to vindicate their constitutional and statutory interests in the seized materials and ensure the government does not use the seized voting data for improper purposes. Thus, even if the Court resolves *Pitts* by ordering the government to return the seized materials but allowing it to keep copies of the documents, Petitioners' concerns regarding the government's improper use of the underlying information would remain.

Finally, the government cites the "minimal litigation" so far in this matter as justification for a stay in this this matter. Petitioners have requested expedited relief due to the urgency of this matter and the severe risk to privacy and voting rights of the Petitioners. This matter is ripe for immediate resolution.

A stay would merely delay resolution of the distinct relief that Petitioners seek with potentially devastating consequences as to Petitioners' privacy and voting rights.

## CONCLUSION

The Court should deny the government's motion to dismiss or stay. If the Court grants the stay, Petitioners respectfully request that the Court order the government not to use the seized materials for any purpose outside the scope of criminal investigation during the length of the stay.[7]

| | |
|---|---|
| Dated: March 6, 2026 | Respectfully submitted, |

/s/ Marc P. Epstein

| | |
|---|---|
| Gerald Weber (GA Bar No. 744878) | Edward G. Caspar* |
| Law Offices of Gerry Weber, LLC | Leah Frazier* |
| Post Office Box 5391 | Robert N. Weiner* |
| Atlanta, Georgia 31107 | Jeffrey Blumberg* |
| Telephone: (404) 522-0507 | Julie Houk* |
| wgerryweber@gmail.com | Catherine Meza* |
| | Marc Epstein* |
| *Attorneys for Petitioners National Association for the Advancement of Colored People ("NAACP"), National Association for the Advancement of* | Grace Thomas* LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW 1500 K Street NW, Suite 900 |

---

[7] The Court should also reject the government's improper attempt to "reserve[] all potential arguments in opposition to Petitioners' Rule 41(g) motion." ECF No. 26 at 4; *see* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."); *see also, e.g.*, *Johnson v. Terry*, No. 1:18-CV-1899-AT-JSA, 2021 WL 11718253, at *3 (N.D. Ga. Sept. 1, 2021) (holding Rule 12(g)(2) prohibits parties from raising overlooked defenses in subsequent Rule 12 motions).

*Colored People Georgia State Conference ("Georgia NAACP"), NAACP Atlanta, Georgia Coalition for the People's Agenda, Dontaye Carter, and Tamara Orange*

*\* Admitted to practice pro hac vice*

Washington, D.C. 20005
ecaspar@lawyerscommittee.org
lfrazier@lawyerscommittee.org
rweiner@lawyerscommittee.org
jblumberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
cmeza@lawyerscommittee.org
mepstein@lawyerscommittee.org
gthomas@lawyerscommittee.org
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 6th day of March 2026.

*/s/ Marc P. Epstein*
Marc P. Epstein

# CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated this 6th day of March 2026.

*/s/ Marc P. Epstein*
Marc P. Epstein